RECEIVED

USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK

DATE __8_/_17_/_11___

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

GEORGE COMMETA JACOBS,       CIVIL ACTION
      Petitioner           SECTION "P"
                            1:10-CV-01125

VERSUS

WARDEN, LOUISIANA STATE     JUDGE DEE D. DRELL
PENITENTIARY,             MAGISTRATE JUDGE JAMES D. KIRK
      Respondent

## REPORT AND RECOMMENDATION MAGISTRATE JUDGE

Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by pro se petitioner George Commeta Jacobs ("Jacobs") on July 12, 2010. Jacobs is contesting his conviction by a jury in the Louisiana Ninth Judicial District Court, Rapides Parish, one count of forcible rape and one count of second degree kidnapping. Jacobs was sentenced to a total of twenty years imprisonment.

Jacobs raises the following grounds for habeas relief:

1. The evidence was insufficient to convict Jacobs.

2. Jacobs had ineffective assistance of counsel due to counsel's failure to investigate Jacobs' case, failure to issue subpoenas for critical witnesses, and failure to present a defense.

Jacobs alleges and the Respondent concedes exhaustion of Jacobs' state court remedies. The Respondent filed a brief in response to Jacobs' petition (Doc. 9). Jacobs' petition is now

before the court for disposition.

## Rule 8(a) Resolution

This court is able to resolve the merits of this <u>habeas corpus</u> petition without the necessity of an evidentiary hearing because there is no genuine issue of material fact that is relevant to the petitioner's claims, and the State court records provide the required and adequate factual basis necessary to the resolution of the habeas corpus petition. <u>Moya v. Estelle</u>, 696 F.2d 329, 332-33 (5th Cir. 1983); <u>Easter v. Estelle</u>, 609 F.2d 756, 761 (5th Cir. 1980); Habeas Corpus Rule 8(a).

## Standard of Review

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall be considered only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a).

Under 28 U.S.C. § 2254 and AEDPA, which is applicable to habeas petitions filed after its effective date on April 24, 1996, habeas relief is not available to a state prisoner with respect to a claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim (1) resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a

2

decision that was based on an *unreasonable determination* of the facts in light of the evidence presented in the State Court proceeding. Therefore, pure questions of law and mixed questions of law and fact are reviewed under Section 2254 (d)(1), and questions of fact are reviewed under Section 2254(d)(2). <u>Martin v. Cain</u>, 246 F.3d 471, 475-76 (5th Cir. 2001), cert. den., 534 U.S. 885, 122 S.Ct. 194 (2001), and cases cited therein.

<u>Facts</u>

The facts of this case as set forth by the Louisiana Third Circuit Court of Appeal (See Doc. 9, Ex. 6, p. 9/111-13/111), in <u>State v. Jacobs</u>, K-A06-01453 (La. App. 3d Cir. 4/4/2007), 953 So.2d 1051, writ den., 2007-KO-1010 (La. 11/16/2007, 967 So.2d 522, are as follows:

> "The Defendant was convicted of kidnapping and forcibly raping V.C. on February 27, 2004.
>
> \*         \*         \*
>
> "V.C. testified that in February 2004, she was walking to her mother's home when she saw the Defendant, whom she had met in the past. The Defendant asked her where she was going, and he then offered her a ride, which she accepted. V.C. told the Defendant the street he needed to turn onto; however, he passed up the street and said he didn't give a f___. V.C. testified that she began '[t]alking back' to the Defendant and he told her to shut the f___ up and, if she did not he would beat the f___ out of her. V.C. further testified that, at that point, she told the Defendant, 'if I go home with my face messed up, my mama and daddy,' and the Defendant said he did not give a f___ about her mother, and then hit her in the mouth, busting her lip. The Defendant then stopped at a vacant house.
>
> "Once the two were stopped, but still inside the car, the Defendant told V.C. to take her clothes off. V.C. testified that she slowly began taking her clothes off

3

and the Defendant told her to hurry up.  V.C. further
testified that the Def3endant was very angry and kept
saying he was going to f___ up or beat her face.  After
her clothes were off, V.C. testified that the Defendant
told her to lay back, and once she did so, he retrieved
a condom from the glove box and attempted to have sex
with her.  However, V.C. testified that the Defendant
could not obtain an erection.  He then retrieved a second
condom and made her put the condom on him.  V.C. went on
to testify that the Defendant told her that 'if that
didn't work at the time, I had to, or do the - the oral
sex, or whatever.'  She testified that she 'just couldn't
do it.  And I told him he just do what he got to do to me
because I couldn't perform that, because I ain't never
did that before.'  She went on to testify that she then
got into the back seat, at the Defendant's command, and
lay on her stomach.  V.C. testified that 'he couldn't get
it in.  So he had some...lotion or something in the back
seat, and tried to get it in from the back.  But I don't
th ink it - I'm not sure if he did not, because at that
time I didn't care.  I just gave up.'  The Defendant then
told her to lie on her back.  Eventually, V.C. put her
clothes back on, and the Defendant dropped her off at her
mother's house.  Additionally, V.C. testified that the
Defendant said he did not give a f___ if she reported the
incident.

"Once at her mother's home, V.C. testified, she went into
the bathroom, bathed, and then went to sleep on the floor
of her son's bedroom.  The next morning, V.C. went to her
sister's home and told her son and her nieces what had
occurred.  V.C. further testified that she also went to
the Defendant's mother's home and told her what had
happened.  According to V.C., the Defendant's mother
begged her not to report the incident at that time.
Eventually, V.C. checked herself into Huey P. Long
Medical Center.  V.C. denied having sex with the
Defendant prior to the date of the offense.

"B.S., V.C.'s niece, testified that prior to V.C. being
admitted to the hospital, V.C. said she had been raped
and indicated that the person who raped her lived down
the street.  B.S. testified that V.C. was not 'acting
herself' at that time, and she had a busted lip.  B.S.
further testified that she told V.C. not to report the
incident.

"C.S., V.C.'s niece, testified that V.C. told her that a

4

man had driven her to a location, busted her lip, and raped her.  C.S. stated that when V.C. spoke to her about the incident, she was scared and crying.

"Candi Christophe, a social work supervisor at Huey P. Long Medical Center who was qualified at trial as an expert Clinical Mental Health Social Worker, testified that V.C. was voluntarily admitted to the hospital on March 13, 2004.  During Christophe's first session with her, V.C. reported that she had been raped.  Pointing out that delayed reporting of rapes was not unusual, Christophe testified that she encouraged V.C. to file a report.  Christophe went on to testify that there was no doubt in her mind that V.C. had been raped and that it was 'very obvious to all in her body language, her verbal and non-verbal cues, that she had been traumatized.' Christophe stated that she diagnosed V.C. as suffering from post-traumatic stress disorder.

"Officer Joseph Simms, Jr. testified that he was dispatched to Huey P. Long Medical Center on March 18, 2004.  On that day, V.C. told him that she had been taken to a wooded area in a vehicle and raped by a man known as J.W.  She further stated that the man struck her in the mouth and told that if she tried to get away, he would hurt her very badly.  Officer Simms testified that at the time of the report, V.C. was upset and appeared scared.

"Detective Rodney Howard testified that he spoke to V.C. on or about April 14, 2004.  He further stated that when he interviewed V.C. about the incident, she cried, became very emotional, and could not go into detail about what happened to her.  She did, however, tell him that she was attacked aby J.W.  V.C. later told Detective Howard about the rape, and he accompanied her to the location where the alleged offense occurred, which was located approximately three blocks from the home of V.C.'s mother.  Detective Howard testified that he determined that the Defendant was J.W. and that he subsequently compiled a photographic lineup from which V.C. selected the Defendant.  Detective Howard stated that V.C. indicated she knew the Defendant prior to the attack.

"Sergeant William Bates testified that he collected five used condoms, three torn condoms, and three condoms that had not been opened from the area where the alleged offense occurred.  He determined that the area was two to three blocks from V.C.'s mother's home, and the

5

Defendant's home was a couple of blocks farther than V.C.'s mother's home.

"Connie Brown, an employee of the North Louisiana Crime Lab, testified that sperm found on one of the condoms submitted to the lab was consistent with Defendant's DNA. However, she was unable to find DNA matching that of V.C., which she testified was not surprising, since the condoms were exposed to the elements for an extended period of time and were degraded and falling apart when she received them. Brown additionally stated that she could not determine when the DNA was placed inside the condom. The Defendant testified that he met V.C. during the summer of 2003, when she casually walked into his driveway and asked him to drive her to her sister's house. He did so, and after V.C. visited her sister, the Defendant testified that he and V.C. drove to Browns Bend Road, where the two prepared to engage in sexual intercourse. However, the Defendant testified that he did not have any condoms with him, so he went to a store that provided free condoms, and the two returned to the area where they had previously been. However, according to the Defendant, V.C. told him that she did not feel safe, so they did not engage in sexual intercourse.

"The Defendant denied forcing V.C. to have sex with him in February of 2004. However, he testified that he had sex with V.C. twelve to thirteen times in different areas of Alexandria; an overwhelming majority of the time [sic] the two had sex in the Defendant's car. The Defendant further testified that sometimes he gave V.C. money in exchange for sex. He testified that after the two engaged in sexual intercourse, he would drive V.C. to a place where she bought drugs, and then, he would take her home. In the past, the Defendant had convicted of carnal knowledge of a juvenile, manslaughter, forgery, and forcible rape.

*       *       *

"V.C. admitted herself to the hospital two weeks after the incident and sought treatment because she had feelings that she would kill herself or someone else. V.C. had been receiving psychiatric treatment since she was thirty-one years old, and she testified that, prior to the rape, she suffered from depression. V.C. also admitted that she told the doctor that she wanted to kill her sister. However, she testified that she said this out of anger and that she would not actually harm her sister. Additionally, she testified that she probably

used cocaine and marijuana just prior to admitting herself to the hospital, but she was very evasive as to whether she was working or how she was able to afford drugs around the time of the alleged offense."

Law and Analysis

Insufficient Evidence

First, Jacobs contends there is insufficient evidence to support his to convictions. Specifically, Jacobs contends the victim was a single mother of four, an admitted cocaine addict and marijuana abuser, a convicted felon, and a psychiatric patient on numerous anti-psychotic drugs who admitted to having paranoid delusions as well as homicidal ideas about her sister and post-partum depression.

Habeas relief on a claim of insufficient evidence is appropriate only if it is found that, upon the record evidence adduced at trial, no rational trier of fact could have found proof of guilt beyond a reasonable doubt. West v. Johnson, 92 F.3d 1385 (5th Cir. 1996), cert. den., 520 U.S. 1242, 117 S.Ct. 1847, 137 L.Ed.2d 1050 (1997), citing Jackson v. Virginia, 443 U.S. 307, 322-326, 99 S.Ct. 2781, 2791-2792 (1979). To apply this standard, the court looks to elements of the offense as defined by state substantive law. Donahue v. Cain, 231 F.3d 1000, 1004 (5th Cir. 2001). All credibility choices and conflicting inferences are to be resolved in favor of the verdict. A determination of a factual issue made by a State court shall be presumed correct, and the petitioner shall have the burden of rebutting the presumption of

correctness by clear and convincing evidence.  Ramirez v. Dretke, 398 F.2d 691, 693 (5th Cir. 2005).

A jury's determination of witness credibility, the inferences made on the evidence, and the jury's reasonable construction of the evidence is entitled to a great deal of deference by a reviewing court.  Marshall v. Lonberger, 459 U.S. 422, 433-35, 103 S.Ct. 843, 850-51 (1983).  In addition, where there has been a thoughtful review of the sufficiency of the evidence by a state appellate court, that court's findings are entitled to great weight.  Jackson, 443 U.S. at 322 n.15, 99 S.Ct. at 2790 n.15.

In the case at bar, Jacobs contends the victim's testimony was not credible.  The evidence in this case was essentially Jacobs' word against the victim's.  The jury evidently gave more weight to the testimony of the victim, that the intercourse was not consensual, than to Jacobs' testimony.  The victim complained of the rape to a social worker two weeks later; the victim's testimony is supported by the social worker's statement that she believed the victim.  Also, there was forensic evidence proving Jacobs' DNA was in a discarded condom found at the location where the victim stated the rape took place; Jacobs testified he often parked and had sex in his car in that location instead of at home because he lived with his mother (Doc. 9, Ex. 4, pp. 23/100-24/100).  Jacobs also testified that he had sex with the victim on more than one occasion in that location (Doc. 9, Ex. 4, p. 23/100).

8

Review of the sufficiency of the evidence does not include review of the weight of the evidence or the credibility of the witnesses, as those determinations are the exclusive province of the jury. <u>United States v. Young</u>, 107 Fed.Appx. 442, 443 (5th Cir. 2004), citing <u>United States v. Garcia</u>, 995 F.2d 556, 561 (5th Cir. 1993). Therefore, Jacobs' arguments that the victim's testimony was not credible are to no avail.

Viewing the evidence in the light most favorable to the convictions, the victim's testimony was enough for the jury to find Jacobs guilty of forcible rape and second degree kidnapping.[1] Moreover, on direct appeal the Louisiana Third Circuit Court of Appeal thoroughly reviewed the testimony and evidence introduced at trial, and concluded that the issues pointed out by Jacobs did not contradict V.C.'s testimony that she had been raped by him, and that the trier of fact, the jury, apparently chose to believe V.C.'s testimony over Jacob's.

Since Jacobs only argues the victim's credibility and the

---

[1] Under La.R.S. 14:42.1(A)(1), the elements of forcible rape which had to be proven are: (1) an act of vaginal or anal intercourse; (2) without the lawful consent of the victim; and (3) where the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape. <u>State v. J.S.</u>, 63 So.3d 1185, 1188 (La. App. 3d Cir. 2011).
Under La.R.S. 14:44.1, the elements of second degree kidnapping which had to be proven in Jacob's case are: (1) the forcible seizing and carrying of any person from one place to another, (2) when the victim is injured or sexually abused.

weight of the evidence, and he has not carried his burden of rebutting the presumption that the jury's verdict was correct by clear and convincing evidence. This ground for relief is meritless.

Ground 2 - Ineffective Assistance of Counsel

Next, Jacobs argues that he had ineffective assistance of counsel due to counsel's failure to investigate Jacobs' case, failure to issue subpoenas for critical witnesses, and failure to present a defense.

To prevail on a habeas complaint of ineffective assistance of counsel a complainant must demonstrate that: (1) his counsel's performance was deficient; and (2) the deficient performance prejudiced his defense. A defendant is prejudiced if there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceedings would have been different. To make that determination the court must examine the proceedings as a whole, giving due consideration to the weight of the evidence supporting the verdict and evaluating the alleged failings of counsel in that total setting. The court does not assess any alleged error in isolation. In an examination of state proceedings under 28 U.S.C. § 2254 the court will not reject an adjudication on the merits unless the action by the state court is found to be contrary to, or an unreasonable application of, clearly established federal law, or the state court's determination of the facts is

10

Case 1:10-cv-01125-JTT-JDK  Document 16  Filed 08/18/11  Page 11 of 20 PageID #:  839

manifestly unreasonable in light of the evidence.  Jones v. Cain,
227 F.3d 228, 230 (5th Cir. 2000), and cases cited therein.

Counsel has a duty to make reasonable investigations or to
make a reasonable decision that makes particular investigations
unnecessary.  Nelson v. Hargett, 989 F.2d 847, 850 (5th Cir. 1993),
citing Strickland v. Washington, 466 U.S. 668, 691, 104 S.Ct. 1052,
2066 (1984).  A determination of whether an investigation is
reasonably adequate depends upon a variety of factors, including
the number of issues in the case, the relative complexity of those
issues, the strength of the Government's case, and the overall
strategy of trial counsel.  Baldwin v. Maggio, 704 F.2d 1325, 1333
(5th Cir. 1983), cert. den., 467 U.S. 1220, 104 S.Ct. 1669 (1984).
However, bare allegations do not suffice.  A defendant or
petitioner who alleges a failure to investigate on the part of his
counsel must allege with specificity what the investigation would
have revealed and how it would have altered the outcome of the
trial.  Nelson, 989 F.2d at 850, citing United States v. Green, 882
F.2d 999, 1003 (5th Cir. 1989).  Under Strickland, even where trial
counsel has failed to adequately investigate a case, a defendant
must demonstrate that he has been prejudiced by his counsel's
failure.  See  Lockhart v. McCotter, 782 F.2d 1275, 1282 (5th
Cir.1986), cert. den., 479 U.S. 1030, 107 S.Ct. 873 (1987).  To
show prejudice, the petitioner must prove that an alleged breach of
his attorney's duty to investigate resulted in an actual and

substantial disadvantage to the course of his defense.   Baldwin, 704 F.2d at 1333.

A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time. Dowthitt v. Johnson, 230 F.3d 733 (5th Cir. 2000), cert. den., 532 U.S. 915, 121 S.Ct. 1250 (2001), citing Strickland v. Washington, 466 U.S. 668, 689, 104 S.Ct. 2052 (1984), 466 U.S. at 689.   Thus, the court's scrutiny of counsel's performance is highly deferential.   The court must be particularly wary of arguments that essentially come down to a matter of degrees, i.e., did counsel investigate enough or did counsel present enough mitigating evidence?   Those questions are even less susceptible to judicial second-guessing.   Dowthitt, citing Kitchens v. Johnson, 190 F.3d 698, 703 (5th Cir.1999).

In a habeas proceeding alleging ineffective assistance of counsel, the petitioner has the burden of proof.   U.S. v. Chavez, 193 F.3d 375, 378 (5th Cir. 1999), citing Clark v. Collins, 19 F.3d 959, 964 (5th Cir. 1994), cert. den., 513 U.S. 966, 115 S.Ct. 432 (1994).

Jacobs contends his attorney visited him twice in jail and corresponded with him.   Jacobs contends he provided his defense counsel with a statement and copies of his time sheets from Shoney's restaurant, where he worked, as well as his cell phone

records about one and a half years prior to trial, and that he brought those records to his trial with him, but his attorney did not use them. Jacobs contends his defense attorney failed to subpoena a crucial witness, Jaworra Jacobs, who is Jacobs' nephew as well as the manager of the restaurant where Jacobs worked, to testify as to Jacobs' relationship with the victim and as to Jacobs' time sheet showing he was at work when the offense took place. The trial judge refused to allow him to call Jaworra Jacobs because he had not been subpoenaed or sequestered, and the State had not been notified of that witness. Defense counsel stated at trial that Jaworra Jacobs would have testified that Jacobs knew the victim and had some kind or a relationship with her prior to the rape. Jacobs also argues herein that Jaworra Jacobs would have verified Jacobs' work record.

Jacobs contends his attorney was also ineffective for refusing to introduce his cell phone records, which showed the victim had called him fifteen times in the six weeks before the offense. Jacobs argues this evidence refutes the victim's testimony that she barely knew Jacobs, only saying hello to him a few times and never having any other association with him, and shows that Jacobs did not have a reason to rape her. Jacobs also contends his cell phone records show the victim continued to call him after the date of the offense.

Jacobs also argues his attorney was ineffective for refusing

to introduce his work records from Shoney's, which showed Jacobs was working on February 27, 2004 from 6:07 p.m. to 2:50 a.m. as a cook.  The victim claimed she was raped by Jacobs on February 27, 2004 at about 7:30 p.m.  Jacobs contends his attorney was ineffective and prejudiced his defense by refusing to use this alibi evidence.

The trial record shows that Jacobs attempted to testify before the jury as to the records, but his attorney essentially ignored him and did not bring the records up again (Doc. 9, Ex. 4, p. 22/100).  The trial record further shows that Jacobs' attorney stated to the judge that he had Jacobs' work record and had provided it to the prosecutor, but he was not going to use it at trial (Doc. 9, Ex. 4, p. 7/100).

It is never sound trial strategy to forgo a complete defense to an indictment.  See U.S. v. Hansel, 70 F.3d 6 (2d Cir. 1995). A court should "evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S.Ct. at 2065. Tolerance of tactical miscalculations is one thing; fabrication of tactical excuses is quite another. Kimmelman v. Morrison, 477 U.S. 365, 386-387, 106 S.Ct. 2574, 2588-2589 (1986) (hindsight cannot be used to supply a reasonable reason for decision of counsel).

In the case at bar, the Louisiana Third Circuit Court of Appeal reviewed the issue os ineffective assistance of counsel and stated in its appellate opinion (Doc. 9, Ex. 6, p. 23/111):

14

"We note that the Defendant testified at trial that he had his work records and that his cell phone records were on defense counsel's table. Additionally, during trial, defense counsel informed the court that he wanted to call the Defendant's nephew as a witness and that the nephew would testify regarding the Defendant's employment records and his past relationship with V.C. However, the trial court ruled that the witness could not be called, as the State was not given notice that he would testify, and he was not placed under the rule of sequestration. We cannot determine from the record what trial counsel did, or did nor do, in this matter or the basis for any decision made by counsel. In sum, we find the record before us insufficient to make definitive findings as to the Defendant's claims of ineffective assistance of counsel. Thus, we find that the Defendant's claims should be relegated to post-conviction relief proceedings, where, if warranted, a full evidentiary hearing may be conducted to develop a sufficient record on the issues raised."

Defendant then filed an application for post-conviction relief (Doc. 1, Ex. 4, p. 30/90). A different panel of the Louisiana Third Circuit Court of Appeal reviewed Jacobs' claim and denied relief, stating that "[Jacobs] presents only conclusory allegations without meeting the criteria for proof of ineffective assistance of counsel" (Doc. 1, Ex. 5, p. 2/71). Apparently, the court panel reviewing the post-conviction relief application did not see either the appellate panel's opinion or Jacobs' time sheet from work and cell phone records. Defendant submitted his work and cell phone records with his post-conviction relief application (Doc. 1, Ex. 5, pp. 8/71, 45/71-56/71) and they are in the record currently before this court. The court's failure to review the evidence of record, and its finding that Jacobs had not submitted any evidence, was objectively unreasonable.

15

Defense counsel had Jacobs' work time sheet for the date of the offense several months in advance; defense counsel even stated at trial that he had provided it to the State but did not intend to use it. The undersigned cannot think of a single tactical reason why an attorney would not use documentary alibi evidence that placed the defendant somewhere other than the scene of the crime at the time of the offense. Apparently counsel was unprepared for trial and did not make a reasoned tactical decision to forego Jacobs' alibi, particularly in light of the fact that no defense was presented at trial; the primary evidence at trial was the victim's word against Jacobs'.

Moreover, interviews of defendants' co-workers and supervisor, the names of whom were provided to defense counsel by Jacobs, could have indicated whether their testimony would have bolstered the evidence of Jacobs' work time sheet, either by providing direct a eyewitness alibi for Jacobs or by giving weight to the evidence of Jacobs' time sheet through showing the procedures followed in Jacobs' workplace. None of Jacobs' co-workers was subpoenaed. Although Jacobs' supervisor was present during trial, the trial judge held that Jacobs' could not call him as a witness because his attorney had not provided the State with his name as a possible witness, had not subpoenaed him, and he had not been placed under the rule of sequestration (Doc. 9, Ex. 4, pp. 7/100-8/100). Where the only evidence linking Jacobs to the offense was the victim, a

"far-from-ideal witness," it is fair to conclude that an unbiased alibi witness could readily have altered the verdict at trial.  See Bigelow v. Haviland, 576 F.3d 284, 291 (6th Cir. 2009).   Also, Griffin v. Warden, 970 F.2d 1355 (4th Cir. 1992)("where trial was 'swearing match' between biased witnesses, counsel's failure to call unbiased alibi witness was prejudicial").

In a trial in which the victim's testimony was the primary evidence against the defendant, any evidence which impeached the victim's testimony and credibility would be valuable.  However, in Jacobs' case, defense counsel did not use the cell phone records provided to him before trial by Jacobs, which showed the victim had more than the slightest of acquaintances with him, as she testified, but instead knew him well enough to call him regularly and often.  Moreover, defense counsel failed to subpoena Jaworra Jacobs to testify as to Jacobs' relationship with the victim, resulting in the exclusion of his testimony.  Again, there is no tactical reason to forego evidence with which to attack the victim's credibility, particularly in a case which involves a credibility contest between the victim and the defendant.  Compare, Bigelow v. Williams, 367 F.3d 562 (6th Cir. 2004).

It is apparent on the face of the trial record that defense counsel failed to investigate and present Jacobs' alibi defense at his trial and failed to investigate and present evidence to impeach the victim's credibility.  The prejudice from that is obvious;

Jacobs was left without a defense at trial.  There could not have been any strategic choice between defenses made by counsel since no defense was presented, other then Jacobs' testimony that he did not commit the offense.  In a credibility contest between the defendant and the victim, evidence which impugns the victim's credibility or which provides the defendant with an alibi stands a very good chance of changing the outcome of the trial in defendant's favor. Therefore, Jacobs has proven there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceedings would have been different

Since Jacobs has proven he had ineffective assistance of counsel at trial, Jacobs' petition for writ of habeas corpus should be granted.

<u>Conclusion</u>

Based on the foregoing discussion, IT IS RECOMMENDED that the court find that Jacobs was denied his right to t he effective assistance of counsel and THAT JACOBS BE GRANTED A CONDITIONAL WRIT OF HABEAS CORPUS, ordering his discharge from custody unless the State of Louisiana returns him to the Ninth Judicial District Court, Rapides Parish, Louisiana, for rearraignment within 60 days after the date of this Court's judgment.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 2(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file

18

specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Pursuant to Rule 11(a) of the Rules Governing Section 2254 cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** *See* 28 U.S.C. § 2253(c)(2). **A courtesy copy of the memorandum shall be provided to the District Judge at**

19

Case 1:10-cv-01125-JTT-JDK   Document 16   Filed 08/18/11   Page 20 of 20 PageID #:  848


**the time of filing.**

THUS DONE AND SIGNED in Alexandria, Louisiana on the _____ day of August, 2011.


JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE